<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
LANDMARK AMERICAN INSURANCE
COMPANY,                                                            :

      Plaintiff,                                             :          Civil Action No. 08-1250 (FLW)

      v.                                                            :
                                                                         **OPINION**
RIDER UNIVERSITY, <u>etal.</u>,                                :

      Defendants.                                          :
_____

**<u>WOLFSON, United States District Judge:</u>**

    Presently before the Court are various motions arising out of an insurance coverage dispute concerning the March 2007 death of Gary DeVercelly ("DeVercelly"), a Rider University ("Rider") student. Plaintiff Landmark American Insurance Company ("Landmark" or "Plaintiff") filed a motion for summary judgment against Defendants Michael Torney ("Torney"), Dominic Olsen ("Olsen"), Vincent Cagulero ("Cagulero")[1], Clinton Main ("Main")(collectively the "Individual Defendants"), and their respective insurers, Amica Mutual Insurance Company ("Amica"), Liberty Mutual Insurance Company ("Liberty") and Farmers Insurance Company of Flemington ("Farmers").[2] Specifically, Landmark seeks a declaration that it does not owe a defense obligation to these Individual Defendants for their alleged participation

---

     [1] The Court notes that Defendant Cagulero has not responded nor moved in response to Plaintiff's motion. However, for the reasons set forth herein, the Court finds that its findings as to Defendants Torney, Olsen and Main apply to Defendant Cagulero as well.

     [2] The Court also notes that Landmark initially sought judgment against Devin Marcus, however, Landmark dismissed the Complaint as to Marcus on April 26, 2010.

in events arising out of DeVercelly's death as set forth in a lawsuit captioned <u>DeVercelly v. Rider University, et al.</u>, ("<u>DeVercelly</u> Action") that was filed in the Superior Court of New Jersey. Defendant Main and his insurer, Farmers, filed a cross-motion for summary judgment against Landmark seeking a declaration that Landmark owes Main a duty to defend. Finally, Defendant Torney and his insurer, Amica, filed a cross-motion to dismiss requesting that this Court decline to exercise jurisdiction over this matter pursuant to 28 U.S.C. § 2201. Defendant Olsen and his insurer, Liberty, joined the cross-motion to dismiss. For the reasons that follow, Plaintiff's and Defendants' motions are denied.

I. BACKGROUND AND PROCEDURAL HISTORY

This Court recounted the facts of this case in its Summary Judgment Opinion dated June 30, 2009 ("Opinion"), and thus, the Court will only briefly recite the relevant facts herein and incorporates the facts set forth in its earlier Opinion for the purpose of this motion.

On March 12, 2008, Landmark filed an action seeking Declaratory Judgment that it does not owe a duty to defend a number of Defendants in the <u>DeVercelly</u> Action. On April 23, 2009, Plaintiff filed a Third Amended Complaint ("Complaint"). Thereafter, Defendant Rider and its insurer filed a motion for summary judgment on Plaintiff's Complaint. On June 30, 2009, this Court denied in part and granted in part Defendants' Motion for Summary Judgment. Specifically, and in relevant part, the Court held that Landmark had no duty to defend individual Defendant Adriano DiDonato in his capacity as a Phi Kappa Tau ("PKT") Fraternity member in connection with any claims in the <u>DeVercelly</u> Action based on the "Hazing Exclusion" set forth in Landmark Insurance Policy No. LHA101733 (the "Landmark Policy"). Subsequently, the

current motions as set forth above, were filed by the parties.

### A. The Parties to this Action

Plaintiff Landmark is an Oklahoma corporation with its principal place of business in Atlanta, Georgia. (CITE) Pl. Compl. ¶ 3. Defendant Torney was a member and the President of PKT who allegedly "authorized, directed, and/or participated in one or more of the hazing events and/or the aftermath" as described in the DeVercelly Complaint. Plaintiff's Statetment of Material Facts, Reese Decl., Ex. B., DeVercelly Complaint ("DeVercelly Complaint") ¶¶ 54, 57, 58. Defendant Olsen was a member and the Pledge-Master of PKT who allegedly "authorized, directed, and/or participated in one or more of the hazing events and/or the aftermath" as described in the DeVercelly Complaint. Id. ¶¶ 61, 62. Defendant Cagulero was a member of PKT and DeVercelly's "big brother" who allegedly "authorized, directed, and/or participated in one or more of the hazing events and/or the aftermath" as described in the DeVercelly Complaint. Id. ¶¶ 65,66. Defendant Main was a member of PKT who allegedly "authorized, directed, and/or participated in one or more of the hazing events and/or the aftermath" as described in the DeVercelly Complaint. Id. ¶¶ 69, 70.

### B. The DeVercelly Action

The DeVercelly Action is a wrongful death and survivorship lawsuit against PKT, several Chapter members, Rider and certain Rider employees pending in the Superior Court of New Jersey, Mercer County, Law Division. DeVercelly allegedly consumed alcohol at a Chapter fraternity pledging event held at the PKT student housing facility owned by Rider and occupied by Chapter members. DeVercelly, as a pledge of PKT, was allegedly required to attend several

3

events conducted by and for the benefit of PKT through its Chapter.  DeVercelly Complaint ¶ 9.  On the night DeVercelly consumed the alcohol that led to his death, the Chapter was allegedly holding its traditional recruitment and pledge event known as "Big/Little" night during which DeVercelly, together with his chapter big brother, drank from a bottle of Absolut Vodka provided by Chapter members.  Id.  ¶¶ 11, 80, 82-83. Indeed, according to the DeVercelly Complaint, during the "Big/Little" event, PKT pledges including DeVercelly  "were hazed, including being compelled to consume alcohol purchased by PKT members in dangerous quantities under circumstances constituting legal duress."  DeVercelly Complaint ¶ 12.  As a result of the alleged forced consumption of alcohol, DeVercelly became ill and was taken to the second floor of the Chapter house where Chapter members attempted to induce him to vomit.  Id. ¶¶ 14, 87-92.  According to the DeVercelly Complaint, individual defendants "including defendant Main, [were] aware that Gary was seriously ill, but misrepresented to others that Gary was not in need of assistance."  Id.  ¶ 94.  After several hours, emergency medical assistance was called to the Chapter house and DeVercelly was taken to the hospital where he died.  Id.  ¶¶ 20-24.

In the DeVercelly Action, Defendants Torney, Olsen, Cagulero and Main  were sued for: (1) negligence and violation of assumed duty to reasonably care for DeVercelly (Count X); and (2) negligence and violation of duty to prevent harm to DeVercelly (Count XI).

C. Landmark Policy's Terms and Conditions

Landmark issued PKT a commercial general liability policy, Policy No. LHA101733, effective for the period October 1, 2006 to October 1, 2007, which had a limit of liability in the amount of $1,000,000 per occurrence to PKT.  The Landmark Policy lists PKT as the Named

Insured. Additionally, the Landmark Policy includes a provision, entitled "Who Is An Insured," which states, in relevant part:

> Who is an insured of the Commercial General Liability Coverage Form is amended to include the following paragraph:
>> Each of the following is an insured:
>
> A. Fraternity chapters that are chartered and colonies that are recognized by the Named Insured;
>
> B. Any organization over which the Named Insured maintains ownership or majority interest;
>
> C. House Corporation, Householding Corporations, Chapter Education Foundations, House Associations, Alumni Control Boards, Alumni Advisory Boards, Alumni Associations, Alumni Corporations, Alumni Chapters, Board of Advisors, Board of Governors, Executive Councils and Parent Clubs, but only while acting within the scope of their duties on behalf of the Named Insured;
>
> D. Officers, Directors, Trustees, Partners, Coordinators, Custodians, Committee Members, Council Members, Volunteers, Housemothers, Resident Advisors, Faculty Advisors, Fraternity members, Member Candidates (Pledges), and Employees of the Named Insured, but only while acting within the scope of their duties on behalf of the Named Insured.

Plaintiff's Statement of Material Facts, Reese Decl. ("Reese Decl."), Ex. A.

In addition, Endorsement No. 17 to the Landmark Policy, entitled "Hazing, Sexual or Physical Aubse [sic] or Molestation Exclusion", states that it "modifies" Commercial General Liability Coverage because:

> This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" arising out of hazing, sexual or physical abuse, or from molestation by any insured, or any Additional Insured.
>
> This exclusion applies only to those insureds who direct others to participate, and/or participate in the excluded act.

Reese Decl., Ex. A.

II. Cross-Motions for Summary Judgment

A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v.

6

Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the fact finder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

B. Landmark's Motion for Summary Judgment and Main and Farmers' Cross-Motion for Summary Judgment

i. Whether the "Hazing Exclusion" applies to the Individual Defendants

In the instant matter, Landmark contends that it is entitled to summary judgment because it has no duty to indemnify or defend the Individual Defendants based on allegations set forth in the DeVercelly Action.  Specifically, Landmark argues that because the allegations state that the Individual Defendants "participated in hazing events alleged to have caused DeVercelly's death," the hazing exclusion "unambigously" applies.  Pl's Br. in Support of Motion for Summary Judgment ("Pl's Moving Br.") at 13.  In response, Defendants contend that the hazing exclusion

is ambiguous and that there are questions of facts regarding whether the Individual Defendants participated in the hazing. Defendants' Olsen and Liberty's Opposition Br. at 12, 13, 17. In addition, at least one set of Defendants, Main, and his insurer, Farmers, filed a cross-motion for Summary Judgment alleging that Landmark has a duty to defend based on the language of the insurance policy and the allegations set forth in the DeVercelly action. For the reasons set forth below, the Court denies both motions for summary judgment.

Under New Jersey law, "an insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). In determining whether a claim against an insured creates a duty of the insurer to defend, New Jersey courts base their determinations upon a comparison of the allegations contained in the underlying complaint with the language of the insurance policy. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992). If the factual allegations in the underlying complaint fall within the scope of the policy's coverage, then "the duty to defend arises, irrespective of the claim's actual merit." Id. In other words, when the allegations in the complaint correspond to the language of the insurance policy, there is a duty to defend. Danek v. Hommer, 28 N.J. Super. 68, 76-77 (App. Div. 1953).

However, "the duty to defend is not necessarily limited to what is set forth in the complaint." Jolley v. Marquess, 393 N.J. Super 255, 271 (App. Div. 2007). In SL Industries v. American Motorists Ins. Co., 128 N.J. 188, 198 (1992), the court explained that "facts outside the complaint may [also] trigger a duty to defend." Id. at 198. In reaching this holding, the Court reasoned that, "[i]nsureds expect their coverage and defense benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third party, chooses to

phrase the complaint against the insured." Id. At 198-99.

Similarly, if the terms of an insurance policy are ambiguous, "they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Flomerfelt, 202 N.J. at 441. That said, when considering ambiguities contained in an insurance policy, a court may not "write for the insured a better policy of insurance than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529 (1989).

Under New Jersey law, exclusionary clauses are enforced if they are "specific, plain, clear, prominent, and not contrary to public policy." Princeton Ins. Co., v. Chunmuang, 151 N.J. 80, 95 (1997). Thus, if the words contained in an exclusionary clause are clear and unambiguous, "a court should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 537 (1990). Generally speaking, insurance policy exclusions must be narrowly construed and the insurer bears the burden of bringing the case within the exclusion. Am. Motorists Ins. Co. V. C-A Sales, Co., 55 N.J. 29, 41. However, "courts must be careful not to disregard the 'clear import and intent' of a policy's exclusion" and must "evaluate whether, utilizing a "fair interpretation" of the language, it is ambiguous. Flomerfelt, 202 N.J. at 443 (citations omitted).

The Exclusionary Policy at issue here is the "Hazing Exclusion" set forth in the Liberty Policy which provides that "[t]his insurance does not apply to 'Bodily Injury' . . . 'Personal Injury' . . . arising out of hazing, sexual or physical abuse, or from molestation by any Insured, or any Additional Insured. This exclusion applies only to those Insureds who direct others to participate, and/or participate in the excluded act." Reese Decl., Ex. A. Plaintiff contends that because this exclusion "unambiguously" applies to the allegations of hazing set forth in the

9

DeVercelly Complaint it has no duty to defend. Defendants, on the other hand, argue that hazing is not a defined term in the Liberty Policy and that the term "hazing" is ambiguous.

Although "hazing" is not a defined term in the Landmark Policy, the Court finds that the term "hazing" as it is used in the Landmark Policy and as it applies to the facts alleged in the DeVercelly Action is clear and unambiguous. Indeed, the DeVercelly Complaint sets forth a number of allegations which make clear that DeVercelly died as a result of a "hazing" event that involved excessive alcohol consumption. Specifically, the DeVercelly Complaint alleges the "Big/Little" event "was a longstanding PKT fraternity ritual" during which "PKT pledges would seek permission from a PKT fraternity officer to drink their 'family drink' with their assigned Big Brother and family." Id. ¶¶ 77, 79, 80. Further, the Complaint alleges that on the night DeVercelly died, PKT pledges including DeVercelly "were hazed, including being compelled to consume alcohol purchased by PKT members in dangerous quantities under circumstances constituting legal duress." DeVercelly Complaint ¶ 12. Moreover, the Complaint provides that the alcohol consumed at the "Big/Little" event was provided and paid for by the fraternity. Id. ¶ 80. Thus, the Court finds that the allegations of hazing set forth in the DeVercelly Complaint regarding the "Big/Little" event fit squarely within the Landmark Policy's "Hazing Exclusion."

Nonetheless, the Court also finds that, on this record, there are questions of fact that preclude the application of the "Hazing Exclusion" to Individual Defendants Torney, Olsen, Cagulero and Main. On its face, the "Hazing Exclusion" provides that it applies only "to those Insureds who direct others to participate, and/or participate in the excluded act." Reese Decl., Ex. A. As discussed above, the excluded act at issue is the hazing that occurred at the Big/Little event at PKT on the night of DeVercelly's death, and, in particular, the compelled consumption of

10

excessive alcohol.  While the DeVercelly Complaint alleges that Defendants Torney, Olsen, Cagulero and Main "participated in one or more of the hazing events and/or the aftermath as described herein," DeVercelly Compl. ¶¶ 58, 62, 66, 70, the Complaint does not definitively allege that any of the above-named Individual Defendants participated in the "Big/Little" event or the compelled consumption of alcohol.  At most, the DeVercelly Complaint alleges that the Individual Defendants may have participated in the hazing "and/or the aftermath." Id. (emphasis added).  Because the "Hazing Exclusion" is limited to those parties who "direct[ed] others to participate, and/or participate[d]" in the hazing, there is a question of fact as to whether each of the Individual Defendants actually participated in the hazing, i.e., the excluded event, or if they merely participated in the events that flowed therefrom.[3]  Accordingly, the Court denies both Plaintiff's and Defendants' motions for Summary Judgment.[4]

---

[3]The Court is aware that Defendant Main submitted an affidavit stating that he was not involved in any hazing activities.  Main Aff. ¶ 8.  In light of the ongoing discovery in the underlying litigation, the Court does not consider Mr. Main's self-serving affidavit as sufficient to satisfy the summary judgment standard.  See, e.g., In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Products Liability Litigation, 2009 WL 3444767, at * 2 (E.D. Pa. 2009) (explaining that in the Third Circuit "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment" and that "[a]n affidavit that fails to set forth specific facts and is conclusory in nature fails to satisfy the party's burden")(citations omitted).

[4]The Court notes that this Opinion is consistent with its Opinion dated June 30, 2009. There, the Court held that the Hazing Exclusion applied to Defendant DiDonato because the allegations set forth in the DeVercelly Complaint specifically provided that DiDonato "was at the PKT house during the Big/Little event on [the night of the alleged hazing]; witnessed the ritual and its aftermath; provided substantial support for the event, and did nothing to stop what was obviously illegal and dangerous." DeVercelly Complaint ¶ 12. Unlike the allegations against the Individual Defendants in this matter, the allegations against DiDonato expressly state that DiDonato participated in the excluded act, i.e., the hazing.

<u>ii. Whether the Individual Defendants are "Insureds" under the Landmark Policy</u>

In addition, Plaintiff contends that the Individual Defendants are not "Insureds" under the terms of the Landmark Policy and thus, it owes them no duty to defend. First, Landmark argues that because the Individual Defendants did not have positions with the national fraternity and "had no direct responsibilities to the national organization" they are not Insureds under the Landmark Policy. Pl's Moving Br. at 17. In addition, Plaintiff argues that the Individual Defendants were not "acting within the scope of their duties on behalf of the Named Insured." Reese Decl., Ex. A. In response, Defendants argue that the Summary Judgment should be granted in their favor since the allegations against the Individual Defendants as set forth in the <u>DeVercelly</u> Complaint provide that each of the Defendants was "acting within the scope of his authority for and on behalf of PKT and the National PKT." <u>DeVercelly</u> Complaint ¶¶ 57, 61, 65, 69. Thus, Defendants contend that the Individual Defendants are "Insureds" under the policy. The Court finds that there are questions of fact as to whether the Individual Defendants were acting within the scope of their duties to PKT which preclude determination of this issue on summary judgment.

Initially, the Court notes that it has already ruled on Landmark's attempt to divorce the National Fraternity from its individual chapters for purposes of coverage under the Landmark Policy. Specifically, in its previous Opinion, this Court explained that "[t]hroughout the Landmark Policy, the Named Insured is broadly described as 'Phi Kappa Tau Fraternity' as opposed to a more limited description such as, for example, the 'National Fraternity.' Further, the business description and operations of the insured are described as 'National Fraternities,' not 'National Fraternity.' In addition, the premium policy is calculated 'per member.' . . .

12

Accordingly, the Chapter is a part of the Named Insured." Opinion at 20 (emphasis added). Because this Court has already ruled that the Chapter is part of the Named Insured, for purposes of these Motions, the fact that the Individual Defendants did not hold positions with the National Fraternity nor that they allegedly did not have responsibilities to the National Fraternity are of no consequence. The plain language of the Landmark Policy demonstrates that membership in the Chapter, a part of the Named Insured, may be sufficient to bring them within the scope of the Insurance Policy.

However, the Landmark Policy only provides coverage for "[f]raternity members, [and] Member Candidates (Pledges) . . . but only while acting within the scope of their duties on behalf of the Named Insured." Reese Decl., Ex. A. It is undisputed that Defendants Torney, Olsen, Cagulero and Main were members of PKT. Pl's Moving Br. at 1. Thus, the only question at issue is whether the Individual Defendants were acting within the scope of their duties during the events set forth in the DeVercelly Action. Because the Court has already held that there are questions of fact as to what role each of the Individual Defendants played on the night of DeVercelly's death and, specifically, whether they participated in the "Big/Little" event or its aftermath, the Court is unable to determine whether the Individual Defendants were acting within or outside the scope of their duties as Fraternity members. For these reasons, the Court will deny both parties' motions for Summary Judgment.

III. Torney and Amica's Motion to Dismiss

Finally, Defendant Torney and his insurer, Amica, filed a cross-motion to dismiss Plaintiff's Complaint. Specifically, Torney and Amica argue that this Court should decline jurisdiction over Landmark's declaratory judgment pursuant to 28 U.S.C. § 2201, and that the action should be

13

refiled in state court. For the reasons set forth below, the Court denies Defendants' cross-motion to dismiss. However, the Court will exercise its discretion to stay this proceeding pending the outcome of discovery in the underlying DeVercelly Action. See The Cincinnati Ins. Co. v. Trosch, 271 Fed.Appx. 205, 206 (3d Cir. 2008) (holding that there was no abuse of discretion when the District Court stayed an action pending the outcome of underlying insurance litigation).

The Declaratory Judgment Act ("the Act") provides that: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). Despite the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), the discretionary language of the Act means federal courts have "no compulsion to exercise [the] jurisdiction" the statute grants. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942). In other words, the statute "confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995). Thus, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. at 288.

When the district court, in the exercise of its judgment deems no useful purpose in the declaratory action, "it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." Id. at 288. In an effort to guide the discretionary decision, the Third Circuit has identified the considerations to be weighed in determining the appropriateness of a declaratory judgment involving insurance coverage issues: 1) a general policy of restraint

when the same issues are pending in a state court; 2) an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; and 3) avoidance of duplicative litigation. State Auto Ins. Companies v. Summy, 234 F.3d 131, 134 (3d. Cir.2000) (citing United States v. Commonwealth of Pa., 923 F.2d. 1071, 1075-76 (3d Cir.1991)).

The first consideration mandates a general policy of restraint when the same issues are pending in state court. Summy, 234 F.3d at 134. As discussed above, the issues in determining an insurance's company's duty to defend are "not limited to the facts and allegations contained within the four corners of the underlying complaint; rather facts outside the complaint may trigger the duty." SL Indus. Inc., v. Am. Motorists Ins. Co., 128 N.J. 188. Here, Plaintiff argues that there are no questions of fact to preclude summary judgment because the Landmark Policy "does not cover any of the underlying allegations in the DeVercelly Action regardless of how the factual disputes in the underlying matter are resolved." Pl's Reply Br. at 13. The Court does not agree. Indeed, as discussed above, the Court finds that, based on the allegations in the DeVercelly Complaint, there are issues of fact as to whether the "Hazing Exclusion" applies to Torney, Olsen, Cagulero and Main. Specifically, because the "Hazing Exclusion" is limited to those parties who "direct[ed] others to participate, and/or participate[d]" in the excluded act, i.e., the hazing, and because allegations in the DeVercelly Complaint only provide that the Individual Defendants may have participated in the hazing "and/or the aftermath," DeVercelly Complaint ¶¶ 58, 62, 66, 70, the Court needs to assess facts that are not yet established. Indeed, as Plaintiff itself has recognized, a determination of coverage issues may not be proper "where the coverage obligation cannot be determined absent resolution of factual matters at issue in the underlying

15

liability litigation." Pl's Reply Br. at 12-13.  Thus, in light of the ongoing discovery in the underlying action, and, more specifically, this Court's holding that there are questions of fact as to whether the "Hazing Exclusion" applies to the Individual Defendants, the policy of restraint recommends the staying of this action.

Summy also requires a determination as to whether there is a conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.  Summy, 234 F.3d at 134.  Here, the Court cannot assess the exclusionary aspects of coverage until additional facts regarding each of the Individual Defendants' roles on the night of DeVercelly's death are assessed in the underlying litigation.  In addition, because a factual inquiry into the Individual Defendants' roles is central to the underlying litigation, there is a substantial risk for duplicative litigation.  Summy, 234 F.3d at 134.  Given the ongoing discovery in the underlying matter and the still developing character of that litigation, the preference for avoiding duplicative litigation is compelling in this matter.

Given the Court's findings that discovery in both the federal and state court actions would be largely duplicative and that the determination of the coverage issues here and the tort issues in the state court necessitate the need to await further discovery in the state case, a stay of the federal court proceedings is an exercise of "wise judicial administration."  Wilton, 515 U.S. at 279.  Thus, the Court will stay this matter pending the outcome of discovery in the DeVercelly Action.

IV. CONCLUSION

For the foregoing reasons, the Court denies both Plaintiff's and Defendants' motions for summary judgment and denies Defendants' Torney and Amica's cross-motion to dismiss.

16

However, the Court exercises its discretion to sua sponte stay this matter and administratively terminate the case pending the outcome of factual discovery in the underlying DeVercelly Action pending in Superior Court.


Dated: October 14, 2010                                               /s/ Freda L. Wolfson
                                                                      Freda L. Wolfson, U.S.D.J.